Taiyo v. NEI 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00032-CV







Taiyo Corporation, Appellant



v.



National Enterprises, Inc., Liquidating Trust; Clark, Thomas &


 Winters, P.C., Trustee; and Lago Vista, Inc., Appellees








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 94-05661A, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING







 Taiyo Corporation ("Taiyo") appeals from an adverse judgment rendered in its suit
against National Enterprises, Inc., Liquidating Trust ("NEI"); Lago Vista, Inc. ("LVI"); and
Clark, Thomas & Winters, P.C., Trustee ("CTW"). We will affirm the trial court's judgment.



THE CONTROVERSY


 Taiyo owned all the shares of common stock issued by LVI. LVI, in turn, owned
all the shares of common stock issued by certain other corporations that owned real and personal
property. NEI recovered a large money judgment against Taiyo and obtained a writ of execution
against Taiyo's shares of LVI stock. To avoid levy of the writ and a subsequent sale of the stock,
NEI and Taiyo entered into a contractual agreement (hereinafter "the Agreement") as follows:


1. NEI deferred "immediate liquidation" of Taiyo's LVI stock;


2. Taiyo delivered to CTW, in trust, the share certificates evidencing the LVI
stock together with certain other documents, including security agreements
reflecting NEI's "lien" on the LVI stock and instruments empowering CTW
to effectuate a transfer of the shares on LVI's corporate books ("properly
executed stock powers with the transferee left blank");


3. CTW undertook to act as "escrow agent" for the documents and "trustee"
respecting the following provisions of the Agreement;


4. If Taiyo paid its debt timely as required by the Agreement, CTW promised to
return the documents; if Taiyo defaulted, however, CTW "shall take title to
the stock certificates . . . and proceed to sell" the LVI stock, pay Taiyo's debt
from the proceeds together with certain expenses, and deliver any balance to
Taiyo; and


5. NEI might also "take any and all actions available to it . . . under applicable
law."



 Taiyo sued for declaratory judgment on the following theory: (1) CTW's act of
causing the shares to be transferred on LVI's corporate books amounted to a "disposition" of the
collateral under section 9.504 of the Texas Business and Commerce Code ("Code") (1) or a
"retention" of the collateral under Code section 9.505; (2) CTW did not comply with the
prerequisites of section 9.504 in that CTW did not notify the debtor (Taiyo) before disposition and
did not dispose of the collateral in a manner that was commercially reasonable; (3) Taiyo did not
comply with the prerequisite of section 9.505 in that CTW did not notify Taiyo that CTW
proposed to retain the collateral in satisfaction of Taiyo's obligation; (4) all of Taiyo's obligations
to NEI were therefore discharged under the decisions in Tanenbaum v. Economics Laboratory,
Inc., 628 S.W.2d 769 (Tex. 1982) and Whirlybirds Leasing Co. v. Aerospatiale Helicopter Corp.,
749 S.W.2d 915 (Tex. App.--Dallas 1988, no writ); and (5) as a result, none of Taiyo's properties
remained subject to any "liens" in favor of NEI. Taiyo's brief here and its pleadings and motions
in the trial court combine the different provisions found in sections 9.504 and 9.505. 
Nevertheless, we have stated its contentions in the light most favorable to Taiyo.

 The validity of the Agreement is unchallenged. The material facts are undisputed. 
Taiyo defaulted in its obligation to pay its debt according to the terms of the Agreement. 
Following Taiyo's default, CTW caused the LVI stock to be transferred to CTW on LVI's
corporate books. The trial court, on opposing motions for summary judgment, ordered that Taiyo
take nothing by its suit for declaratory relief. Taiyo appeals to this court on two points of error. 
Taiyo raises only questions of law, specifically the proper construction of sections 9.504 and
9.505 and their application to the undisputed facts.



DISCUSSION AND HOLDINGS


 CTW acted as a representative of NEI, the secured party. Therefore, under the
Code CTW may be viewed as the secured party. See Code § 9.105; 1 Grant Gilmore, Security
Interests in Personal Property § 10.3 (1965).

 Section 9.504(a) provides that following a debtor's default, the secured party "may
sell, lease or otherwise dispose of . . . the collateral" by public or private proceedings but every
aspect of the disposition must be commercially reasonable, including the secured party's giving
reasonable notice to the debtor before disposition. Code § 9.504(a) & (c). We hold that CTW's
act in causing the change in LVI's corporate books did not constitute a "disposition" within the
meaning of section 9.504. CTW's action plainly did not constitute a sale of collateral because a
sale requires a passing of title. Code § 2.106. The words "lease" and "otherwise dispose of" are
not similarly defined in the Code. Their intended meaning may be inferred, however, from
section 9.504 as a transfer of some right in the collateral, even though not all such transfers will
amount to a disposition. See 2 Gilmore, supra § 44.5, at 1232, n.1.

 On execution of the Agreement, CTW acquired possession of the shares and the
documents necessary to transfer the shares if Taiyo defaulted. Under the express terms of the
Agreement, CTW acquired title to the shares on Taiyo's default. No right in the collateral passed
from CTW to anyone else by reason of the change on LVI's corporate books. We therefore
conclude as a matter of law that CTW's action did not constitute a "disposition" of the collateral
within the meaning of Code section 9.504.

 Section 9.505 provides that following a debtor's default, a secured party in
possession of the collateral may "propose to retain the collateral in satisfaction of the" debtor's
obligation. Code § 9.505(b). The secured party must give the debtor written notice of the
proposal. If the debtor objects in writing within a specified period, the secured party must dispose
of the collateral as set out in section 9.504. If the debtor does not object, the secured party may
retain the collateral in satisfaction of the debt. Code § 9.505(b). The requirements of notice to
the debtor and an absence of objection on the debtor's part assure that the value of the collateral
approximates the amount of the debt. See 2 Gilmore § 44.3.

 Here, CTW did not invoke the statutory procedure of section 9.505 in order to
retain the collateral in satisfaction of Taiyo's debt. CTW had no obligation to make such a
proposal following Taiyo's default. Had CTW retained the collateral, CTW would have been
obliged to prove its compliance with the notice requirement of section 9.505(b) and the absence
of an objection by Taiyo as conditions precedent to recovering a deficiency judgment against
Taiyo. See Tanenbaum, 628 S.W.2d at 771-772; Whirlybirds, 749 S.W.2d at 918; 2 Gilmore,
supra § 44.9.4. We need not discuss whether CTW's act in causing a change on LVI's corporate
books amounted to a retention of the collateral because the record shows that CTW has not sued
Taiyo for a deficiency judgment. We hold accordingly.

 We overrule Taiyo's two points of error and affirm the trial court's judgment. 



 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and Kidd; Justice Powers Not Participating

Affirmed

Filed: October 11, 1995

Do Not Publish

1.   Tex. Bus. & Com. Code Ann. § 9.504 (West 1987). For convenience, we shall
hereafter refer to the Code by sections only.


The trial court, on opposing motions for summary judgment, ordered that Taiyo
take nothing by its suit for declaratory relief. Taiyo appeals to this court on two points of error. 
Taiyo raises only questions of law, specifically the proper construction of sections 9.504 and
9.505 and their application to the undisputed facts.



DISCUSSION AND HOLDINGS


 CTW acted as a representative of NEI, the secured party. Therefore, under the
Code CTW may be viewed as the secured party. See Code § 9.105; 1 Grant Gilmore, Security
Interests in Personal Property § 10.3 (1965).

 Section 9.504(a) provides that following a debtor's default, the secured party "may
sell, lease or otherwise dispose of . . . the collateral" by public or private proceedings but every
aspect of the disposition must be commercially reasonable, including the secured party's giving
reasonable notice to the debtor before disposition. Code § 9.504(a) & (c). We hold that CTW's
act in causing the change in LVI's corporate books did not constitute a "disposition" within the
meaning of section 9.504. CTW's action plainly did not constitute a sale of collateral because a
sale requires a passing of title. Code § 2.106. The words "lease" and "otherwise dispose of" are
not similarly defined in the Code. Their intended meaning may be inferred, however, from
section 9.504 as a transfer of some right in the collateral, even though not all such transfers will
amount to a disposition. See 2 Gilmore, supra § 44.5, at 1232, n.1.

 On execution of the Agreement, CTW acquired possession of the shares and the
documents necessary to transfer the shares if Taiyo defaulted. Under the express terms of the
Agreement, CTW acquired title to the shares on Taiyo's default. No right in the collateral passed
from CTW to anyone else by reason of the change on LVI's corporate books. We therefore
conclude as a matter of law that CTW's action did not constitute a "disposition" of the collateral
within the meaning of Code section 9.504.

 Section 9.505 provides that following a debtor's default, a secured party in
possession of the collateral may "propose to retain the collateral in satisfaction of the" debtor's
obligation. Code § 9.505(b). The secured party must give the debtor written notice of the
proposal. If the debtor objects in writing within a specified period, the secured party must dispose
of the collateral as set out in section 9.504. If the debtor does not object, the secured party may
retain the collateral in satisfaction of the debt. Code § 9.505(b). The requirements of notice to
the debtor and an absence of objection on the debtor's part assure that the value of the collateral
approximates the amount of the debt. See 2 Gilmore § 44.3.

 Here, CTW did not invoke the statutory procedure of section 9.505 in order to
retain the collateral in satisfaction of Taiyo's debt. CTW had no obligation to make such a
proposal following Taiyo's default. Had CTW retained the collateral, CTW would have been
obliged to prove its compliance with the notice requirement of section 9.505(b) and the absence
of an objection by Taiyo as conditions precedent to recovering a deficiency judgment against
Taiyo. See Tanenbaum, 628 S.W.2d at 771-772; Whirlybirds, 749 S.W.2d at 918; 2 Gilmore,
supra § 44.9.4. We need not discuss whether CTW's act in causing a change on LVI's corporate
books amounted to a retention of the collateral because the record shows that CTW has not sue